JAY S. TAYLOR AND LOUISE F. TAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Taylor v. Commissioner
Docket No. 6653-81.
United States Tax Court
T.C. Memo 1983-34; 1983 Tax Ct. Memo LEXIS 752; 45 T.C.M. (CCH) 545; T.C.M. (RIA) 83034; January 18, 1983. Jay S. Taylor, pro se. David W. Johnson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $4,015 in petitioners' Federal income tax for the year 1978 and additions to tax under sections 6651(a)[1] and 6653(a) in the amount of $314.16 and $200.75, respectively. The issues for decision are: 1. Whether petitioners are entitled to a deduction for a claimed loss of $10,486.04 to the Jay Taylor *754 Family Trust. [2]
2. Whether petitioners are entitled to a deduction of $4,200 they claimed for an alleged contribution to an individual retirement account. 3. Whether petitioners received unreported income of $1,232.82 from the Harlandale Independent School District. 4. Whether petitioners are entitled to a deduction of $1,083.90 they claimed for rental expenses. 5. Whether petitioners are entitled to two claimed dependency exemptions. 6. Whether petitioners are liable for the additions to tax under sections 6651(a) and 6653(a). The facts were stipulated. Petitioners offered no testimony. To facilitate the disposition of the issues we will combine our findings of fact and opinion with respect to each issue. Jay S. Taylor and Louise F. Taylor (petitioners) are husband and wife who resided in San Antonio, Texas, at the time they filed their petition in this case. Their joint Federal income tax return for the year 1978 was filed *755 on May 29, 1979, with the Internal Revenue Service Center at Austin, Texas. No extension of time for filing the return late was granted by respondent. Jay S. Taylor (Jay) also filed a Form 1041 for the "Jay Taylor Trust" for 1978 with the Internal Revenue Service Center at Austin. During 1978 both petitioners were employed as teachers by the Harlandale Independent School District. Their combined wages were $27,115.95 as reported on their Form 1040. 1. Claimed Loss from Family Trust
On July 5, 1978, Jay, as grantor, executed various documents to create a "Constitutional Pure Equity Trust" under the name of the "Jay Taylor Family Trust." His wife, Louise, and one Gordon Stephen Buttorff were made trustees on July 5, 1978, and Jay was made a trustee on July 6, 1978. (Mr. Buttorff is the same person against whom the United States government filed suit on December 28, 1982, in the United States District Court in Dallas to enjoin him from continuing to promote or sell such family trust tax shelter schemes.) Mr. Buttorff resigned as a trustee on July 7, 1978, leaving Jay and Louise as the only trustees. Jay conveyed to the "Jay Taylor Family Trust" on July 5, 1978 various *756 real estate, including his residence, located in Bexar County, Texas, and property in Durham, North Carolina, as well as all of his household and office furniture, certain life insurance policies, bank and credit union accounts, and two automobiles. These assets allegedly had a total market value of $181,255 at the time of the conveyance. The "Constitutional Trust" instrument provided in pertinent part as follows: SECTION II OFFICERS AND MANAGEMENT The Trustees may in their discretion elect among their number a President, Secretary and Treasurer, or any other officers they may deem expedient for proper functioning. Any Trustee may hold two, or more, offices simultaneously, their duties being such as are usual or are prescribed. They may employ agents, executives, or other employees, or designate third persons to hold funds for specific purposes. SECTION III EXPENDITURES The Trustees shall fix and pay compensation of all officers, employees or agents in their discretion, and may pay themselves such reasonable compensation for their services as may be determined by the Board of Trustees. SECTION IV CONSTRUCTION The Trustees, officers, agents or employees possess *757 only such authority as awarded them herein. Authority is understood and meant to be similar to that awarded an executor of an estate wherein the testator directs (illustration) "that my Executor is directed to handle the estate in the manner he thinks to be to the best interest, limited by the terms hereof, without the necessity of resort to the court for permission or approval of any transaction, intending herein to leave open for the court the question of conscientious dealing of my Executor only." SECTION V LIABILITIES The Trustees shall, in the capacity of Trustees and not individually, assume only such liability as may attach to said Trust property assets.This Trustee liability shall not in any manner jeopardize their individual or personal holdings and for any losses they should suffer for any reason through services, they shall be reimbursed from Trust property to the same extent as would non-interested persons. SECTION VII DOCUMENT It is expressly declared that a Trust, and not a partnership, is hereby created; that neither the Trustees, officers, or certificate holders, present or future, have or possess any individual interest in the property or assets of said *758 Trust, nor shall they be personally liable hereunder, as partners or otherwise; that no Trustee shall be liable for the act or omission of his or her Co-trustee, or any other person, whatsoever, whether employed by such Trustee or not, or for anything other than his own, personal breach of Trust. SECTION VIII BENEFICIAL CERTIFICATES OF INTEREST For convenience the equitable interests for distribution shall be divided into One Hundred units, substantially in the certificate form hereto attached. They shall be non-assessable, non-taxable and non-negotiable and the lawful possessor thereof shall be construed the true and lawful owner thereof of record. The lawful owner may, if he so desires, cause his beneficial certificate to be registered with the Secretary of the Board of Trustees. SECTION X POWERS OF TRUSTEE Trustees' powers shall be construed as general powers of citizens of the United States of America, to do anything any citizen may do in any state or country, subject to the restrictions herein noted. They shall continue in business, conserve the property, commercialize the resources, extend any established line of business in industry or investment, as herein *759 specially noted, at their discretion for the benefit of this Trust, such as, viz.: buy, sell or lease land for surface or mineral rights; buy or sell mortgages, securities, bonds, notes, leases of all kinds, contracts or credits, of any form, patents, trademarks or copyrights; buy, sell, or conduct mail-order business, or branches thereof; operate stores, shops, factories, warehouses, or other trading establishments or places of business of any kind; construct, buy, sell, lease or rent suitable buildings or other places of business; advertise different articles or business projects; borrow money for any business project, pledging the Trust property for the payment thereof; hypothecate assets, property, or both, or the Trust in business projects; own stock in, or entire charters of corporations, or other such properties, companies, or associations as they may deem advantageous. Resolutions of the Board of Trustees authorizing a special thing to be done shall be evidence that such act is within its power. Any one lending or paying money to the Board of Trustees shall not be obliged to see the application thereof, all funds paid into the treasury are and become a part of the corpus *760 of the Trust. SECTION XVI TRUSTEES
Trustees shall be not less than two in number, but may be increased for practical reasons beneficial to the Trust. The Trustees herein mentioned by name, or their successors elected to fill vacancies, shall hold office, have and exercise collectively the exclusive management and control of the Trust property and business affairs; PROVIDED, where succession may be desired, the first named Trustee shall hold office for one year, the second, for two years, the third, for three years, in this manner using the same principle for additional Trustees, the successor to each Trustee being elected for a full term of five years; PROVIDED, HOWEVER, that a Trustee may resign or be removed from office by a resolution of the Board of Trustees unanimously concurred in whenever in their opinion said Trustee shall have been guilty of fraud, malfeasance in office, gross neglect of duty, or for cause by the mandate of a court of competent jurisdiction; and PROVIDED FURTHER, that in the event of death, removal from office, or resignation, the Trustees shall appoint or elect a successor by the unanimous concurrence of the remaining Trustees. Should the entire *761 Board of Trustees become vacant, a court of equity may appoint one Trustee, who, in turn, shall appoint the additional Trustees, the Same shall be spread upon the minutes. Any such objection shall deprive the candidate from accepting the Trusteeship. The signing and acknowledging of this Agreement by such Trustee or Trustees, elected or appointed, shall constitute their acceptance of this Trust; and the Trust property, assets and emoluments thereof shall immediately vest in the new Trustee or Trustees without any further act or conveyance. Articles I and II attached to the "Constitutional Trust" instrument provide as follows: ARTICLE I--RESPONSIBILITIES OF THE TRUST A. TRANSPORTATION: In the execution of their duties, The Executive Trustees shall have all necessary means of travel and transportation provided by This Trust and all expenses incidental thereto shall also be provided by This Trust. B. HEALTH CARE: Inasmuch as it is in the best interest of This Trust that its Executive Trustees be in the best of health and recover as quickly and completely as possible from any and all illness and accidents, This Trust shall provide Full Health Care as an expense to The *762 Trust, including, but not limited to, Medical, Dental, Chiropractic, Optometric and all health services; Nursing Home, Hospital, Prescription and Non-Prescription Drugs, Vitamins, special dietary and health care products, and services as may be needed to provide optimum health. c. INSURANCE: The Trustees may at their option, if they feel it is in the best interest of This Trust, provide the Executive Trustees with Life Insurance and Health and Dental Insurance. D. MISCELLANEOUS EXPENSES: All such incidental expenses as may be incurred by the Executive Trustees while in service of Trust business shall be paid by This Trust. Furnishing of receipts, sales slips, cancelled checks etc. shall be considered as necessary and suitable substantiation of the expenses.
ARTICLE II--REMUNERATION In consideration of their Consulting Services, the Executive Trustees shall be entitled to compensation for such services and they shall therefore submit a monthly statement for such services at a rate which shall be mutually agreed upon by the Trustees and Executive Trustees, and upon authorization as reflected in the Minutes of This Trust, the Trustees shall pay such Consulting Fees to *763 the Executive Trustees. It being mutually agreed that the terms and conditions as herein set forth are acceptable to all parties concerned, this Minute shall remain in force for the Life of the Executive Trustees and the incidents herein contained shall continue in force in consideration of the service of the Executive Trustees in the event that at any time the Trustees of This Trust should judge the Executive Trustees incompetent for any reason, and provided that they will, without question or further action, step aside. In acknowledgement and acceptance of these terms and conditions the undersigned have placed their signatures in good faith on this date. On their Federal income tax return for 1978 the petitioners claimed a loss from the "trust" of $10,486.04.On the fiduciary return (Form 1041) for the Jay Taylor Trust, Jay reported income of $1,232.82 and deductions of $11,718,86, reflecting a loss of $10,486.04. Attached to the Form 1041 is the following list of personal expenditures by petitioners which were reported as "other deductions" on line 17: Travel Exp.
$ 246.00
Utilities
1,290.00
Literature
1,021.00
Day Care
432.50
Gasoline
747.47
Insurance
762.24
Hospital Ins.
1,624.93
Teachers Dues
112.15
Safe Deposit Box
21.50
Auto Expenses
2,816.70
Interest Exp. (others)
493.99
Total
$9,568.48
*764 In his notice of deficiency dated February 6, 1981, respondent disallowed the claimed loss of $10,486.04. Petitioners contend that they are entitled to deduct the loss reported by the "Jay Taylor Trust" because it was a bona fide attempt to bring about "an orderly distribution and benefit of our life savings and any accumulation of wealth." Respondent, on the other hand, contends that the claimed trust loss has no substance, but was merely a device to avoid the proper taxation of income. We agree with the respondent. This case is simply another in a long series of cases arising out of the sale of "canned" trusts. Although the petitioners may have thought they were creating a valid "family estate trust," the Courts have repeatedly rejected similar arrangements for a variety of reasons, i.e., (1) because the trust has no economic substance; (2) because the trust effects an anticipatory assignment of income; and (3) because of the applicability of the grantor trust provisions of sections 671 through 677. See and compare Schulz v. Commissioner,686 F.2d 490 (7th Cir. 1982), affg. a Memorandum Opinion of this Court; Horvat v. Commissioner,671 F.2d 990 (7th Cir. 1982), *765 affg. per curiam a Memorandum Opinion of this Court; Gran v. Commissioner,664 F.2d 199 (8th Cir. 1981), affg. per curiam a Memorandum Opinion of this Court, Vnuk v. Commissioner,621 F.2d 1318 (8th Cir. 1980), affg. a Memorandum Opinion of this Court; Luman v. Commissioner,79 T.C. 846 (1982); Epp v. Commissioner,78 T.C. 801 (1982); Contini v. Commissioner,76 T.C. 447 (1981); Vercio v. Commissioner,73 T.C. 1246 (1980); Markosian v. Commissioner,73 T.C. 1235 (1980); Wesenberg v. Commissioner,69 T.C. 1005 (1978). We adhere to the same views in this case. Accordingly, we hold that the petitioners are not entitled to the loss they claimed. 2. Claimed IRA Deduction
Petitioners failed to substantiate their deduction of $4,200 claimed as payments to an individual retirement account. The alleged contributions (totaling $4,200) are reflected on each petitioner's Form W-2 as a "tax shelter annuity," which amounts were not included by the employer in each petitioner's compensation income. Petitioners have not carried their burden of *766 proof on this issue. Rule 142a, Tax Court Rules of Practice and Procedure. Therefore, respondent's determination is sustained. 3. Unreported Income
In 1978 Jay received miscellaneous income of $1,232.82 for travel from the Harlandale Independent School District. This income was not reported on petitioners' Federal income tax return for that year, although Jay received Form 1099 - Misc from the school district. Such amount is includable in his taxable income for 1978.[3]
4. Rental Expenses
Petitioners resided at 322 Early Trail, San Antonio, Texas, until March 1978, when they moved to their current residence at 827 Ware Boulevard in San Antonio. After they moved to the Ware Boulevard house, their son rented the house on Early Trail. Petitioners reported total rents of $850 in 1978 and claimed $300 for depreciation and other expenses of $1,083.90. In his notice of deficiency respondent disallowed petitioners a Schedule E deduction of $1,083.90 (plus depreciation of $300) and treated the expenses as deductible only on Schedule A to the extent *767 of the rental income. The $1,083.90 consisted of the following: Expense
Amount
Interest
$328.32
Taxes
455.58
Insurance
300.00
Accordingly, respondent increased petitioners' income by $1,083.90. [4] This is correct and we sustain it. 5. Dependency Exemptions
Petitioner failed to offer any proof to show their entitlement to the claimed dependency exemptions for Jennifer and Russell. [5] Therefore, we sustain respondent's determination on this issue. 6. Additions to Tax
Petitioners did not file their 1978 income tax return until May 29, 1979, which resulted in 10 percent of the tax being added under the provisions of section 6651(a). They have not shown that their failure to file the return on time was due to reasonable cause. Therefore, we sustain this addition to tax. Petitioners have offered nothing to show that part of the underpayment *768 of tax was not due to negligence or intentional disregard of rules and regulations. The imposition of additions to tax under section 6653(a) has been upheld time and again in cases involving the use of family trusts. See, e.g., Vnuk v. Commissioner,supra at 1321; Luman v. Commissioner,supra, and cases cited therein. In addition, the petitioners claimed a deduction for an IRA to which they were not entitled; they had unreported income; and they claimed two dependency exemptions to which they were not entitled.Accordingly, we sustain this addition to tax. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect for the taxable year in issue.↩
2. Most of the expenses claimed by petitioners on a Form 1041 filed for the trust which generated the alleged loss have been allowed by respondent in his notice of deficiency as itemized expense deductions and automobile expenses.↩
3. Respondent allowed a deduction of $1,232.67 for automobile expenses. None was claimed on petitioners' return.↩
4. However, the amounts for interest, taxes and insurance were allowed by respondent in computing excess itemized deductions of $1,175.32 over the zero bracket amount.↩
5. The dependency exemptions were claimed for petitioners' grandchildren, who were also claimed as dependents by their daughter.↩